UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALVIN W. BOBB,

               Plaintiff,

   -against-

JOHN E. POTTER, Postmaster General,

               Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-284 (FB)(LB)

*Appearances:*
*For the Plaintiff:*
ALVIN W. BOBB, *pro se*
147-23 Hoover Avenue
Briarwood, New York 11435

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: KEISHA-ANN G. GRAY, ESQ.
Assistant United States Attorney
147 Pierrepont Street
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Plaintiff, Alvin Bobb ("Bobb"), proceeding *pro se*, sues defendant, John E. Potter ("Potter"), the Postmaster General, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, alleging that he has suffered race discrimination in the terms and conditions of his employment. Having provided the requisite notice to Bobb, *see* E.D.N.Y. R. 56.2 (requiring notice of summary judgment to *pro se* litigants), Potter moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

**I.**

      Liberally construed to "raise the strongest arguments that they suggest," *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003), Bobb's submissions assert three theories

of discrimination:

    A.    Bobb claims that the following six incidents constituted disparate treatment on the basis of his race:

        1.    In January 2001, Bobb's supervisor, Steve Garrett ("Garrett"), refused to give him overtime.

        2.    Between January and August 2001, Garrett did not assign co-workers to handle Bobb's assignments on his rest days, resulting in double work when he returned.

        3.    On April 2, 2001, Garrett failed to take appropriate action after a group leader cursed at Bobb and accused him of not doing his work.

        4.    On May 29, 2001, Garrett charged Bobb with being absent without leave ("AWOL"), resulting in a letter of warning in Bobb's personnel file and a charge of two hours' unpaid leave.

        5.    On August 1, 2001, Garrett threatened Bobb with discipline after Bobb advised a co-worker to refuse a supervisor's request to have his medical records back-dated.

        6.    After Bobb was injured on the job on August 16, 2001, the USPS delayed submitting the necessary paperwork to the Office of Worker's Compensation Programs ("OWCP") for approximately one month.

    B.    Bobb further claims that the same six incidents, taken together, constituted a racially hostile work environment.

    C.    Finally, Bobb claims that in March or April of 2001, Garrett assigned him to do work left undone by two other custodians; he claims that the AWOL charge (#4 above) was in retaliation for having complained to an equal employment opportunity ("EEO") counselor about the extra workload.

As grounds for summary judgment, Potter argues (1) that, except for the AWOL claim, none of Bobb's claims were submitted to informal pre-complaint counseling, as required by 29 C.F.R. § 1614.105 ("Aggrieved [federal employees] who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter."); (2) that Bobb's administrative EEO charge did not assert theories of hostile environment or retaliation; and (3) that, with respect to all claims, Bobb has failed to adduce sufficient evidence to make out a *prima facie case*. For the following reasons, the motion is granted.

## II.

### A. Disparate Treatment

To make out a *prima facie* case of disparate treatment under Title VII, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Although the Second Circuit has described this burden as "*de minimis*," *id.*, summary judgment is nevertheless appropriate "where the moving party has submitted facts sufficient to show that the non-moving party's claim has no merit, and the non-moving party's attempts to rebut the movant's facts consist only of 'mere allegations or denials' of the facts asserted by the movant." *Forsyth v. Federation Employment & Guidance Serv.*, 409 F.3d 565, 570 (2d Cir. 2005).

3

For the purpose of summary judgment, Potter does not dispute that Bobb is black and that he was qualified for his position. With respect to the third element, the Second Circuit has recently reiterated what qualifies as an "adverse employment action":

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.... An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.... Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (citations and internal quotation marks omitted). "[W]hether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination," *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006); "[b]ecause there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).

Here, however, the Court need not "pore over" Bobb's various claims because even assuming that each of the incidents qualifies as an adverse employment action, Bobb has failed to adduce any evidence giving rise to an inference of discrimination. Such an inference can be raised in a variety of ways, including the employer's "criticism of the plaintiff's performance in [racially] degrading terms" or "invidious comments about others in the employee's protected group." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). There is no evidence that Garrett made any such comments.

4

A plaintiff may also raise an inference of race discrimination "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group," *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); however, before any meaningful comparisons can be made, the plaintiff must show that he was "'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [himself]." *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 2000)). At his deposition, Bobb testified that he knew of no other employee that had been similarly treated by Garrett. *See, e.g.*, Pl.'s Dep at 109 ("Q. Why do you think it was race? A. Because I'm the only one he is doing this to. Q. How do you know that you are the only one he did this to? A. Well, I don't see any other person that he harasses like this. I've never seen any protracted harassment tactics like this on one individual for the time of being there."). Even assuming that Bobb's testimony were sufficient to establish that he was singled out for less favorable treatment, it would not be sufficient to establish that that treatment was *based on his race* because Bobb acknowledged that the workforce supervised by Garrett comprised a significant number of black custodians. *See* Pl.'s Dep. at 76 ("[M]ost of them are black."). Thus, the fact that Garrett treated other custodians of all races more favorably than Bobb, even if true, does not give rise to an inference of race discrimination.

At bottom, the basis for Bobb's claims of race discrimination is fairly summarized in the following statements he made at his deposition:

> A. I don't know what it is race, but I have an inclination that's what it was about.

> Q. Where do you get your inclination from?
>
> A. Truthfully speaking, I think my gut feeling that he [Garrett] doesn't treat anybody else like this. He never treated anybody like this.

Pl.'s Dep. at 96. Bobb's "gut feeling" that Garrett's treatment of him was based on race is not sufficient to create an inference of discrimination. *See Taylor v. Polygram Records*, 1999 WL 124456, at *16 (S.D.N.Y. 1999) ("[Plaintiff's] belief, based on no evidence other than gut instinct, that [her supervisor] treated her with hostility because of her race, cannot justifiably support an inference of discrimination when nothing in the record remotely links [the supervisor's] treatment of her to her race.").

Since Bobb's failure to establish a *prima facie* case of disparate treatment based on race is dispositive, the Court need not address Potter's alternative argument that the claims were not submitted to pre-complaint counseling.

## B. Hostile Environment

To prevail on a hostile environment claim, a plaintiff must show harassment "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The plaintiff must also, of course, establish that the harassment was based on race. *Cf. Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) ("[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex."). Since, as explained above, there is no evidence that Garrett's treatment of Bobb was based on race, Bobb's hostile environment claim must fail;

6

accordingly, the Court does not address Potter's alternative argument that Bobb did not present the claim in his EEO charge.

**C. Retaliation**

Unlike Bobb's disparate treatment and hostile environment claims, which the Court addressed on the merits, his retaliation claim is more easily disposed of on the ground that it was not raised in his EEO complaint. "A federal employee aggrieved by employment discrimination may commence a civil action in the district court only after he has first filed a claim of discrimination with his department or agency[.]" *Stewart v. INS*, 762 F.2d 193, 197 (2d Cir. 1985) (citing 42 U.S.C. § 2000e-16(c)). A claim not included in the administrative complaint, including a retaliation claim, can be asserted in district court "only if it is based on conduct that is 'reasonably related' to the allegations raised [in the administrative complaint]." *Chinn v. City Univ. of N.Y. School of Law at Queens Coll.*, 963 F. Supp 218, 222 (E.D.N.Y. 1997) (citing *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)).

Although Bobb asserted the AWOL charge in his administrative complaint, he proceeded only on the theory of race discrimination, *see* Decl. of Mitchell Sturman, Ex. B (EEO Complaint of Discrimination in the Postal Service dated Oct. 5, 2001); accordingly, the scope of the EEO investigation was whether Bobb was "discriminated against based upon [his] race (Black) when [he was] cited as being Absent Without Official Leave on May 29, 2001[.]" *Id.*, Ex. C (Acceptance of Complaint dated Dec. 10, 2001). Bobb objected to the scope of the investigation on the ground that it omitted his other claims of race discrimination, *see id.*, Ex. D (Letter from Alvin Bobb dated Dec. 17, 2001), which objection

7

resulted in a broadening of the investigation to include those claims. *See id.*, Ex. E (Acknowledgment of Amendment dated Mar. 1, 2002). At no point did Bobb allege, as he now does, that the AWOL charge was in retaliation for his complaint about being assigned other custodians' work in March or April of 2001. "A plaintiff . . . may not sue on a different cause for the discriminatory action than that raised before the EEOC when the new allegation exceeds the scope of a reasonable EEOC investigation, which is the case when new factual allegations support the new theory of discrimination." *Chinn*, 963 F. Supp. at 223 (holding that retaliation claim was not reasonably related to race discrimination claim because the claim presented "both a new legal theory, namely retaliation, and new factual allegations, namely [plaintiff's] long-time criticism of CUNY's treatment of minorities," as the basis for retaliation).

The Court is mindful that the Second Circuit has held that "that when an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed "reasonably related" to the original EEOC filing" because "the allegations of retaliation are seen as stemming from the earlier discriminatory incident, including plaintiff's attempt to vindicate her federal rights against discrimination." *Owens v. New York City Housing Auth.*, 934 F.2d 405, 410-11 (2d Cir. 1991); *see also Butts*, 990 F.2d at 1402. But that rule is "based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself." *Butts*, 990 F.2d at 1402. Here, by contrast, the alleged retaliatory act occurred *before* the filing of the EEO charge, which did not reference the discriminatory act now alleged to have triggered the retaliation. There is, in short, no "close connection" between Bobb's EEO charge and the

8

AWOL incident.

### III.

Potter's motion for summary judgment is granted. Bobb's complaint is dismissed.

**SO ORDERED.**

/S/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 3, 2007